1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DAVID WAYNE WILSON,

11              Plaintiff,                    No. CIV S-06-0537 FCD GGH P
          vs.
12

13   BAKER, et al.,
                                             ORDER &
14              Defendants,                  FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Pending before the court are defendants' motion for summary judgment filed on October

19   5, 2009.  Plaintiff  filed an opposition on November 5, 2009 and defendants filed a reply on

20   December 9, 2009.

21   II.  Complaint

22              This case is proceeding on the third amended complaint (TAC), filed on July 12,

23   2007, with an Equal Protection claim against defendants Khoury, Mitchell, Schwartz, Grannis,

24   Pearson, Tilton and Kernan; a retaliation claim against defendant Baker; and a due process claim

25   as to defendants Arnold, Mitchell, St. Germaine and Cullen for plaintiff's placement and

26   retention in administrative segregation.

1    Plaintiff suffers from a serious mental illness and is a participant in the Enhanced

2    Outpatient Program (EOP).  Plaintiff alleges an Equal Protection claim in that he was originally

3    not given a porter job and no EOP inmates were given orientation pamphlets describing the

4    porter job.

5    Plaintiff alleges that Baker retaliated against him by concocting allegations that

6    plaintiff threatened to kill her which led to a placement in administrative segregation.  Plaintiff

7    alleges that this retaliation was motivated by plaintiff only calling Baker a loudmouth and saying

8    he was going to call government officials about her and file civil lawsuits.

9    Baker filed a Rule Violation Report (RVR) charging plaintiff with threatening a

10   peace officer.  As a result, plaintiff was placed in Administrative Segregation (Ad. Seg.) and

11   remained there for six months and the conditions caused a significant hardship due to his heat

12   sensitive medication.  During this time plaintiff was provided several hearings, yet plaintiff

13   alleges that his due process rights were violated by the defendants.

14   III.  Motion for Summary Judgment

15                Legal Standard for Summary Judgment

16                Summary judgment is appropriate when it is demonstrated that the standard set

17   forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought should be rendered  if . . . there is no

18   genuine issue as to any material fact, and that the movant  is entitled to judgment as a matter of

19   law."  Fed. R. Civ. P. 56(c).

20                Under summary judgment practice, the moving party

21           always bears the initial responsibility of informing the district court
             of the basis for its motion, and identifying those portions of "the
22           pleadings, depositions, answers to interrogatories, and admissions
             on file, together with the affidavits, if any," which it believes
23           demonstrate the absence of a genuine issue of material fact.

24   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

25   burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

26   in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

2

file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

   If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

   In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

3

1  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

2  committee's note on 1963 amendments).

3          In resolving the summary judgment motion, the court examines the pleadings,

4  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

5  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

6  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

7  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

8  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

9  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

10 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

11 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

12 show that there is some metaphysical doubt as to the material facts . . .  Where the record taken

13 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

14 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

15 IV.  Undisputed Facts

16         Plaintiff did not respond to defendants' undisputed facts and merely repeats the

17 factual allegations from the complaint.  The court has attempted to sift through plaintiff's facts to

18 set forth the undisputed facts.  The following of defendants' undisputed facts (DUF) are either

19 not disputed by plaintiff, or following the court's review of the evidence submitted, have been

20 deemed undisputed:

21         From November 2004 to August 2007, plaintiff was incarcerated at California

22 Medical Facility (CMF).  DUF #22.  Plaintiff suffers from serious mental health illnesses and is

23 at the EOP level of care.  DUF #2.  As a result of plaintiff's mental illness he is a member of the

24 class in the class action lawsuit Coleman v. Schwarzenegger.  DUF #5.

25         Plaintiff filed this action on March 14, 2006.  DUF #10.  Tilton was appointed as

26 Acting Secretary of CDCR in April 2006 and appointed Secretary in September 2006.  DUF

4

1 #11,12.  At all relevant times Kernan was CDCR's Director of Adult Institutions.  DUF #13.  At

2 all relevant times Grannis was Chief of the Inmate Appeals Branch.  DUF #14.  At all relevant

3 times Schwartz was Warden of CMF.  DUF #15.  At all relevant times Cullen was the Associate

4 Warden of CMF.  DUF #16.  At all relevant times Arnold was a Facility Captain at CMF.  DUF

5 #17.  At all relevant times Khoury was the Chief Deputy of Clinical Services at CMF.  DUF #18.

6 At all relevant times Pearson was a Facility Captain who served as an appeals examiner in the

7 Inmate Appeals Branch.  DUF #19.  At all relevant times St. Germaine was a Facility Captain at

8 CMF.  DUF #20.  At all relevant times Baker was a Correctional Officer at CMF.  DUF #21.

9                     Defendants Khoury, Mitchell, Schwartz, Grannis, Pearson, Tilton & Kernan

10                     On May 24, 2005, plaintiff field a grievance claiming that certain EOP inmates

11 were being favored and given work as porters.  DUF #24.  Plaintiff also requested that EOP

12 inmates be given orientation pamphlets about the porter job.  DUF #25.  On June 16, 2005,

13 plaintiff received a response to his grievance that provided a description of the porter job and

14 stated that the work schedules would be monitored to ensure even distribution.  DUF #26.

15 Plaintiff appealed this response stating that correctional officers still only used certain EOP

16 inmates, and these inmates worked more extra hours than were allowed.  DUF #27, Motion for

17 Summary Judgment (MSJ), Plaintiff's Depo. at 240.

18                     In response to plaintiff's appeal, non-defendant Dr. Tyler stated that EOP

19 Orientation pamphlets would be pursued and every effort would be made to provide equal access

20 to all EOP inmates.  DUF #28.  Defendant Khoury's name is the supervisor's name on the

21 bottom of the appeal.  TAC at 14.  Defendant Khoury's name is also typed at the bottom of the

22 second level response to the appeal, which was a denial, however the appeal was denied by

23 defendant Mitchell on behalf of Khoury.  TAC at 22.  Plaintiff appealed to the third level of

24 review which was reviewed by defendant Pearson and denied by defendant Grannis.  TAC at 24.

25                     Plaintiff was eventually given a job as a porter for four hours, one day a week, for

26 two to three months, until he was placed in Ad. Seg.  MSJ, Plaintiff's Depo. at 241-42.  No EOP

5

1   inmates at CMF received orientation pamphlets because the pamphlets were still being

2   developed.  DUF #48.

3           <u>Defendant Baker</u>

4           On January 31, 2006, defendant Baker was responding to inmates yelling "man

5   down" when plaintiff made a statement to Baker.  MSJ at 157-58.  On January 31, 2006,

6   defendant Baker, filed a RVR against plaintiff alleging that plaintiff threatened to kill her.  DUF

7   #58.  Plaintiff filed an inmate appeal on February 2, 2006, alleging that defendant Baker

8   concocted the RVR regarding the threat, and filed the RVR to retaliate against plaintiff.  MSJ at

9   7.

10           <u>Defendants Arnold, Mitchell, St. Germaine & Cullen</u>

11           Plaintiff was placed in Ad. Seg. on January 31, 2006, due to the incident with

12   defendant Baker.  DUF #63.  On February 1, 2006, plaintiff was provided with an Ad. Seg.

13   Placement Notice (CDC-114-D) form.  DUF #64, MSJ at 348.  This form described the reasons

14   for plaintiff's placement in Ad. Seg.  DUF #66.  On February 1, 2006, plaintiff met with

15   defendant Arnold for an initial hearing regarding the Ad. Seg. placement.  DUF #67.  Plaintiff

16   provided defendant Arnold a list of questions that plaintiff wanted an investigative employee to

17   ask witnesses in relation to defendant Baker's report.  DUF #68.  The Institutional Classification

18   Committee (ICC) met on February 8, 2006, to review plaintiff's retention in Ad. Seg.  DUF #71.

19   At the meeting defendant Arnold, defendant Mitchell and a non-defendant were present along

20   with plaintiff.  DUF #72, 73.  Plaintiff participated in the hearing.  DUF #73.  The hearing

21   reflected that plaintiff's investigative employee interviewed the inmates plaintiff requested and

22   the inmates stated that they did not hear plaintiff threaten defendant Baker.  MSJ at 111.

23   Nevertheless, the ICC ruled against plaintiff and retained him in Ad. Seg.  <u>Id</u>.  On February 12,

24   2006, plaintiff filed a grievance against defendant Arnold for allegedly violating his due process

25   rights regarding the placement in Ad. Seg. and the hearing.  DUF #77.

26           On March 15, 2006, the ICC, including defendant Arnold met to review whether

1  plaintiff should remain in Ad. Seg.  DUF #78, 79.  The ICC noted that plaintiff had been found

2  guilty of the lesser included offense of action leading to violence based on the incident with

3  defendant Baker.  DUF #80.  Plaintiff attended this hearing and actively participated.  DUF #81.

4  The ICC decided to retain plaintiff in Ad. Seg. pending referral for a transfer to another

5  institution due to defendant Baker's safety concerns.  DUF #82.

6        On March 17, 2006, plaintiff was issued an RVR for destruction of property after

7  yelling he needed to go the law library and then broke the lock to his cell door.  MSJ at 117.  On

8  April 12, 2006, plaintiff attended another ICC hearing, that included defendant Cullen.  DUF

9  #85, 86.  Plaintiff actively participated in the hearing.  DUF #88.  The ICC reiterated that

10  plaintiff would be kept in Ad. Seg. pending transfer to another institution.  DUF #89.  While not

11  pleased with the ICC recommendation, plaintiff was content with a transfer to CMC or LAC.

12  MSJ at 149.

13        On April 27, 2006, the RVR related to defendant Baker was ordered reissued and

14  reheard because defendant Baker did not personally attend the first hearing.  DUF #93.

15        On June 23, 2006, plaintiff filed a suit CIV S-06-1391 FCD EFB, alleging

16  atypical and significant hardships as a result of his placement in Ad. Seg.  Plaintiff alleged that

17  he was on heat medication but as opposed to general population inmates, plaintiff was not

18  provided with cooling measures such as a window, ice, ice drinks, or air vents.  This case was

19  dismissed for failure to state a claim and plaintiff's appeal to the Ninth Circuit was dismissed for

20  failure to prosecute.[1]

21        On June 26, 2006, plaintiff filed a suit CIV S-06-1629 BEG KJM, alleging that he

22  was not being allowed certain medical appliances.  This case was dismissed for failing to exhaust

23  administrative remedies.  On appeal, the Ninth Circuit affirmed the dismissal.

24        On July 20, 2006, the reissued RVR related to defendant Baker was dismissed and

25

26      [1] A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

plaintiff was referred to placement on a reintegrated mixed exercise yard.  DUF #94.  All time
credit losses were restored to plaintiff.  DUF #95.

On July 21, 2006, plaintiff was issued a new Ad. Seg. Placement Notice
indicating that plaintiff was being retained in Ad. Seg. Due to defendant Baker's safety concerns
pending an ICC review.  DUF #96.  Defendant St. Germaine conducted an initial hearing and
retained plaintiff in Ad. Seg.  DUF #97.  On July 26, 2006, an ICC hearing was held with
defendant St. Germaine, defendant Cullen and two non-defendants.  DUF #98.  Plaintiff
personally appeared at the hearing with his staff assistant.  DUF #99.  Due to defendant Baker's
safety concerns, plaintiff was kept in Ad. Seg, pending his transfer to another prison.  DUF #100.

Another ICC hearing was held on August 2, 2006, with defendant Cullen and
defendant St. Germaine and several other non-defendants.  DUF #102.  Plaintiff personally
appeared at this hearing.  DUF #104.  The ICC found that plaintiff no longer needed to be held in
Ad. Seg. and should be released into EOP housing.  DUF #105, 106.  The ICC found that despite
defendant Baker's safety concerns, she had not provided any documentation which supported any
safety issues.  MSJ at 156.

V.  Disputed Facts

Defendant Baker contends that on January 31, 2006, she heard plaintiff say, "Man,
these people don't know me.  I'm going to kill that bitch."  DUF #54.  Defendant Baker
perceived that she was the person that plaintiff was referring to and plaintiff's statement was a
threat.  DUF #55.

Plaintiff maintains that he did not threaten to kill Baker and instead called her a
loudmouth and stated to her that he was going to contact government officials and file civil
lawsuits against her.  TAC at 5.

VI.  Exhaustion of Prison Grievance Process

Defendants first argue that summary judgment should be granted as plaintiff failed
to exhaust the prison grievance process.  However, the court will not look to the merits of this

1  claim.

2       The court ordered service on August 8, 2007.  Defendants filed their first motion

3  to dismiss on December 6, 2007, that was denied.  Defendants filed their answer on March 10,

4  2008 and March 12, 2008.  A Scheduling Order was filed on August 6, 2008, setting the

5  discovery cutoff date (February 1, 2009), and the deadline for the filing of pretrial dispositive

6  motions (July 11, 2009).  Defendants filed a second motion to dismiss on July 9, 2009, that was

7  denied.  Nevertheless, not until October 5, 2009, did these defendants bring this instant motion

8  for summary judgment alleging plaintiff's failure to exhaust administrative remedies before filing

9  this action.  In their favor, defendants did raise and preserve the affirmative defense of

10 non-exhaustion in their answers.

11      Defendants have brought this claim in a motion for summary judgment, as

12 opposed to a motion to dismiss.  Defendants have cited to Panero v. City of North Las Vegas,

13 432 F.3d 949, 952 (9th Cir. 2005), for the notion that a motion for failure to exhaust may be

14 brought at the summary judgment stage.  However, the court in Panero stated that it was

15 appropriate at the summary judgment stage because at the time defendants brought the motion in

16 that case, the affirmative defense of administrative exhaustion was unavailable.  Id.  However,

17 now it is common practice for the affirmative defense of administrative exhaustion to be brought

18 in a motion to dismiss.

19      Under Fed. R. Civ. P. 12(b), as to the specifically enumerated grounds 1 through

20 7, the rule announces that "[a] motion asserting any of these defenses must be made before

21 pleading if a responsive pleading is allowed."  With respect to claims for failing to exhaust

22 motions are generally brought under the nonenumerated grounds of Rule 12(b), that is timely

23 when it, too, is brought prior to the filing of an answer.   This is so because defendants have

24 ready access to the CDCR records, or lack thereof, to support the motion and, if they do not, they

25 have the means to seek an extension of time before filing an answer from the court to be

26 permitted to gather the requisite information.

Even assuming arguendo that defendants properly raised this issue in a motion to dismiss at this time, the court would not look to the merits.  This litigation had been proceeding for more than three and a half years before defendants brought the instant motion and this court has expended great time and resources with this case.

This court has not been able to uncover any binding and conclusive authority on the issuance of the timeliness, or lack thereof, of a nonenumerated 12(b) motion; however, the undersigned finds that the reasoning set forth in a federal court in the Central District of California, where the district judge found defendant's motion to dismiss for nonexhaustion of administrative remedies, filed some ten months after the filing of the answer, untimely, best encapsulates the position of the undersigned:

> Moving Defendant cites no case law which indicates that the issue of exhaustion of administrative remedies may only be raised through a motion for summary judgment.  On the contrary, the Ninth Circuit has repeatedly found that "failure to exhaust nonjudicial remedies is a matter in abatement, not going to the merits of the claim, and as such is not properly raised in a motion for summary judgment."  *Ritza v. International Longshoremen's And Warehousemen's Union, et al.*, 837 F.2d 365, 368 (9th Cir. 1988) (citation omitted); *Inlandboatmens Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir. 2002) ("We have held that a failure to exhaust non-judicial remedies must be raised in a motion to dismiss, and should be treated as such even if raised as part of a motion for summary judgment.")

> Under previously existing Ninth Circuit case law, Moving Defendant should have brought his challenge to Plaintiff's claims based on failure to exhaust administrative remedies *through a timely motion to dismiss* rather than a motion for summary judgment.

> The Ninth Circuit allows a Rule 12(b) motion *any time before the responsive pleading is filed*.  See *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988) (citing *Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335, 1340-41 (9th Cir. 1976) (In *Bechtel*, the Ninth Circuit noted that "while some courts hold that Rule 12(b) motions must be made within 20 days of service of the complaint, the rule itself only requires that such motions 'be made before pleading if a further pleading is permitted.' ')

<u>Thomas v. Baca</u>, 2003 WL 504755, *2 (C.D. Cal. 2003) [emphasis added].

1    　　　The undersigned is aware of conflicting decisions at the district court level within

2    this circuit, see, e.g., Rigsby v. Schriro, 2008 WL 2705376, *1 n. 2 (D. Ariz. 2008) (finding that,

3    where defendant simultaneously filed an answer – asserting the failure to exhaust defense – and

4    an unenumerated motion to dismiss for failure to exhaust administrative remedies, such a motion

5    "need not be made before answering"); Tyner v. Schriro, 2008 WL 752612, *1 n. 1 (D. Ariz.

6    2008) (same); see also, Thrasher v. Garland, 2007 WL 3012615 *2 (W.D. Wash. 2007) (asserting

7    that, although a motion to dismiss pursuant to the specifically enumerated grounds of Rule 12(b)

8    should be brought before the answer is filed, a nonenumerated 12(b) motion "need not

9    necessarily be brought prior to the filing of the answer.")[2]

10   　　　However, this court finds the reasoning of Thomas v. Baca, supra, to better

11   promote judicial efficiency and economy while at the same time limiting unfair prejudice to a pro

12   se prisoner plaintiff.   As noted, the state attorney general has virtually unlimited access to CDCR

13   records.  Defendants' counsel makes no effort whatsoever to explain why such a motion could

14   not have been brought prior to the filing of the answer on behalf of these defendants or in the

15   previous two motions to dismiss.  This court had expended resources and time to screen the case,

16   rule on two separate motions to dismiss and adjudicate a discovery dispute.  Nor is the question

17   of exhaustion, or lack thereof, of administrative remedies a jurisdictional one.  Wyatt v. Terhune,

18   315 F.3d 1108, 1119  n. 13 (9th Cir. 2003) ("PLRA exhaustion is not a jurisdictional

19   requirement.")  Accordingly, the undersigned will not reach the merits of defendants' claim for

20   failure to exhaust administrative remedies.

21   \\\\\

22   \\\\\

23   \\\\\

24   ────────────

25   　　　[2] Moreover, some courts in this district specifically schedule the filing of nonenumerated 12(b) motions two or three months beyond the filing of the answer, which, of course, is certainly and entirely within a court's discretion.  See, e.g., Hill v. Williams, 2008 WL 5212591, *7 (E.D.

26   Cal. 2008); Johnson v. Shawnego, 2007 WL 509226 (E.D. Cal. 2007).

VII.  <u>Equal Protection</u>

Defendants Khoury, Mitchell, Schwartz, Grannis, Pearson, Tilton and Kernan contend summary judgement should be granted as to plaintiff's Equal Protection claim as there is no genuine issue as to any material fact.

<u>Legal Standard</u>

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985).

<u>Analysis</u>

Plaintiff alleges that these defendants violated the Equal Protection clause by not providing plaintiff with a porter job and by not providing orientation pamphlets to EOP inmates regarding prison jobs.  Plaintiff's claims fail for several reasons.

It is undisputed that plaintiff eventually was given work as a porter for four hours a day, one day a week, for two to three months.  Nevertheless, plaintiff has still failed to demonstrate facts that would show a violation of Equal Protection.  It is undisputed that other EOP inmates were given work as porters, thus there is no claim that EOP inmates as a class were denied this job.  Rather, plaintiff alleges that prison officials favored certain EOP inmates for this work, but plaintiff provides no allegations that the certain EOP inmates were of one specific class.  Thus, plaintiff can demonstrate no disparate treatment.  That plaintiff originally wanted a job and was not provided one will not support an Equal Protection claim or any other constitutional claim.  <u>See</u> <u>Coakley v. Murphy</u>, 884 F.2d 1218, 1221 (9th Cir. 1989) (no constitutional right to continuation in work release program to implicate property interest under Fourteenth Amendment).

Plaintiff's claim that EOP inmates did not receive orientation pamphlets regarding porter jobs also fails to state a viable Equal Protection claim.  It is undisputed that orientation

pamphlets were being created, and in their absence plaintiff was verbally informed about the porter job.  More importantly, it is undisputed that no EOP inmates received pamphlets, thus plaintiff has failed to demonstrate that he was treated any differently than the other similarly situated inmates.

Moreover, none of the defendants that plaintiff has named with respect to these claims were responsible for providing porter jobs or creating pamphlets.  Plaintiff argues that all of these defendants are liable as they were supervisors at CMF.[3]  Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In his opposition to the motion for summary judgment, plaintiff argues that these defendants as supervisors failed to properly supervise their employees.  However, other than these conclusory allegations, plaintiff sets forth no facts that the defendants were somehow responsible for deciding who received porter jobs.

Thus, there is no genuine issue as to any material facts regarding plaintiff's Equal Protection claims.  Summary judgment should be granted for defendants Khoury, Mitchell, Schwartz, Grannis, Pearson, Tilton and Kernan.

VIII.  Retaliation

Defendant Baker argues that summary judgment should be granted as plaintiff has failed to demonstrate the elements of his retaliation claim.

---

[3] It is undisputed that defendant Tilton was not even working at CMF when plaintiff's claims arose.

Legal Standard

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal ." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

In order to state a colorable retaliation claim, an inmate must allege either that the alleged retaliation either chilled the inmate's exercise of his First Amendment rights or that he suffered more than minimal harm. Rhodes, 408 F.3d at 567 n. 11. An objective standard governs the chilling inquiry. Brodheim v. Cry, 549 F. 3d 1262, 1271 (9th Cir. 2009). "A plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.' " Id., quoting Rhodes, 408 F.3d at 568-69.

Analysis

The exact nature of plaintiff's claims against defendant Baker are difficult to discern. Defendant Baker maintains that plaintiff threatened to kill her. Plaintiff states that he did not threaten to kill her but called her a loudmouth and stated to her that he was going to contact government officials and file civil lawsuits against her. It is undisputed that as a result of the RVR filed by defendant Baker, plaintiff spent approximately six months in Ad. Seg. The court finds that this time in Ad. Seg. is more than a minimal harm for purposes of a retaliation claim. The court also notes that all time credit losses were restored.

Plaintiff first claims that defendant Baker filed the RVR to cover up her bringing in contraband to the facility, such as tobacco and drugs and for engaging in sexual acts with another inmate. Other than these statements plaintiff provides no factual support to bolster these allegations. Plaintiff does not explain why filing an RVR against him and making up a story that plaintiff threatened to kill her would cover up any of defendant Baker's alleged activities. Nor

14

1    does plaintiff allege that he ever reported Baker for this alleged activity and that was the reason

2    for the retaliation.  Plaintiff also alleges that defendant Baker's behavior was also a result of her

3    attempts to prevent plaintiff from obtaining a porter job.  Again, it is not clear how defendant

4    Baker is related to plaintiff's attempts to obtain a porter job and, of course, plaintiff was given a

5    porter job for two to three months.

6            Plaintiff has failed to set forth sufficient facts to support a claim of retaliation.

7    First, it is not clear from plaintiff's pleadings what was his protected conduct that led to

8    defendant Baker filing the RVR.  Plaintiff also states that defendant Baker was retaliating due to

9    plaintiff's grievances regarding the porter job, but plaintiff has presented no evidence that Baker

10   was involved with his claims regarding the porter jobs or that she was even named in a grievance

11   related to the porter jobs.  While filing grievances is protected, plaintiff has failed to show that

12   defendant Baker was taking action against plaintiff for this protected activity.

13           To the extent that plaintiff could argue that defendant Baker filed the RVR

14   because plaintiff called her a loudmouth and said he was going to contact government officials

15   and file civil lawsuits against her, threats such as these or other insults against prison staff are not

16   protected.  See Mitchell v. Hernandez, 2008 WL 2489210 *3 (E.D. Cal. June 17, 2008).  Plaintiff

17   has not described any lawsuits that he filed against defendant Baker or could have filed against

18   her that would constitute legitimate protected conduct.

19           In addition, while plaintiff does not have to actually show that his speech was

20   actually inhibited or suppressed, see Rhodes, 408 F. 3d. 568-69, the court notes that while

21   plaintiff was in Ad. Seg. between January 31, 2006 and August 2, 2006, he filed six new federal

22   law suits in the Eastern District of California, including the instant case.[4]

23           Thus, even assuming that plaintiff's allegations are accurate, plaintiff has not

24   demonstrated sufficient facts that defendant Baker's conduct was connected to any protected

25   _____

26           [4] No. CIV S-06-0537, No. CIV S-06-1032, No. CIV S-06-1232, No. CIV S-06-1391, No.
     CIV S-06-1629 and No. CIV S-06-1577.

1  activity.  Summary judgment should be granted for defendant Baker.[5]

2  IX.  Due Process

3  Defendants Arnold, Mitchell, St. Germaine and Cullen argue that summary

4  judgment should be granted regarding plaintiff's claims that his due process rights were violated

5  with respect to his placement and retention in Ad. Seg.  In the November 13, 2007 order (Doc.

6  22), the court found that plaintiff's allegations of atypical and significant hardships in Ad. Seg.,

7  regarding his heat medication, were at least sufficient to state a colorable due process claim.  In

8  the motion for summary judgment, defendants do not specifically address plaintiff's claims

9  regarding the heat medication as an atypical and significant hardship.  Thus, for purposes of the

10  instant motion, plaintiff's heat medication allegations will be considered to have caused an

11  atypical and significant hardship.  However, the due process protections that plaintiff did receive

12  will be analyzed.

13  Legal Standard

14  "The requirements of procedural due process apply only to the deprivation of

15  interests encompassed by the Fourteenth Amendment's protection of liberty and property."

16  Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701 (1972).  State statutes and prison

17  regulations may grant prisoners liberty interests sufficient to invoke due process protections.

18  Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2532 (1976).  However, the Supreme Court

19  has significantly limited the instances in which due process can be invoked.  Pursuant to Sandin

20  v. Conner, 515 U.S. 472, 483, 115 S.Ct. 2293 (1995), a prisoner can show a liberty interest under

21  the Due Process Clause of the Fourteenth Amendment only if he alleges a change in confinement

22  that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison

23

24  [5] Pursuant to the May 18, 2010 Related Case Order, the instant case has been related to
CIV S-06-1139 and CIV S-06-1232.  Case CIV S-06-1232 contains identical claims against
25  defendant Baker, where motions are also pending.  As it is recommended that summary judgment
be granted for Baker in the instant case, the undersigned will also recommend in separate
26  findings and recommendations that Baker be dismissed from Case CIV S-06-1232.

1   life." Id. at 484.  As stated above, the court will assume that plaintiff's placement in

2   Administrative segregation implicated a liberty interest.

3           Moreover, "[p]rison disciplinary proceedings are not part of a criminal

4   prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."

5   Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974).  With respect to prison

6   disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written

7   notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice

8   and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement

9   by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the

10  right of the prisoner to call witnesses and present documentary evidence in his defense, when

11  permitting him to do so would not be unduly hazardous to institutional safety or correctional

12  goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues

13  presented are legally complex.  Id. at 563-71.  Confrontation and cross examination are not

14  generally required.  Id. at 567.  The right to call witnesses may legitimately be limited by "the

15  penological need to provide swift discipline in individual cases ... [or] by the very real dangers in

16  prison life which may result from violence or intimidation directed at either other inmates or

17  staff."  Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192 (1985).  As long as the five minimum

18  Wolff requirements are met, due process has been satisfied.  Walker v. Sumner, 14 F.3d 1415,

19  1420 (9th Cir.1994).

20          Analysis

21          After thoroughly reviewing the record regarding plaintiff's many hearings, it is

22  evident that plaintiff was provided a great deal of due process protections and the Wolff

23  requirements were met.  When violations were discovered, the findings were vacated and

24  plaintiff was provided new hearings.

25          Plaintiff was placed in Ad. Seg. on January 31, 2006, and the following day was

26  provided with an Ad. Seg. Placement Notice (CDC-114-D) that described the reasons for the

placement.  On February 1, 2006, plaintiff met with defendant Arnold for an initial hearing regarding the placement.  Plaintiff provided a list of questions that plaintiff wanted an investigative employee to ask witnesses in relation to the charges.  The ICC held a hearing with plaintiff on February 8, 2006, to review his retention in Ad. Seg.  Plaintiff participated in the hearing and his witness' statements were reflected, in that his witnesses stated that they did not hear plaintiff threaten defendant Baker.  Nevertheless, the ICC ruled against plaintiff and retained him in Ad. Seg.

On March 15, 2006, the ICC met again to review whether plaintiff should remain in Ad. Seg.  The ICC noted that plaintiff had been found guilty of the lesser included offense of action leading to violence based on the incident with defendant Baker.[6]  Plaintiff attended this hearing and actively participated.  The ICC decided to retain plaintiff in Ad. Seg. pending referral for a transfer to another institution.

On April 12, 2006, plaintiff attended another ICC hearing, where he actively participated.  The ICC reiterated that plaintiff would be kept in Ad. Seg. pending transfer to another institution.

On April 27, 2006, the RVR related to defendant Baker was ordered reissued and reheard because defendant Baker did not personally attend the first hearing.  On July 20, 2006, the reissued RVR was dismissed and plaintiff was referred to placement on a reintegrated mixed exercise yard and all time credit losses were restored .

On July 21, 2006, plaintiff was issued a new Ad. Seg. Placement Notice indicating that he was being retained in Ad. Seg. due to defendant Baker's safety concerns pending an ICC review.  On the same day an initial hearing was conducted and plaintiff was

---

[6] It is not clear what date plaintiff was found guilty of this offense.  In plaintiff's opposition he states that from March 2, 2005 to March 5, 2005, the disciplinary hearing was held and he was denied the ability to present witnesses.  Assuming this is true, it is moot as the finding from this hearing was dismissed on April 27, 2006 by defendants, and plaintiff was provided a new hearing where the entire offense was dismissed.

1   retained in Ad. Seg.  On July 26, 2006, an ICC hearing was held and plaintiff was kept in Ad.

2   Seg, pending his transfer to another prison.  Another ICC hearing was held on August 2, 2006

3   and plaintiff personally appeared.  The ICC found that plaintiff no longer needed to be held in

4   Ad. Seg. and should be released into EOP housing.

5          Ultimately, the charges against plaintiff were dismissed and he was credited with

6   all time credits lost.  Plaintiff objects to the outcome of certain hearings.  That plaintiff disagrees

7   with the outcome of certain hearings is not sufficient to find a violation of due process.  For

8   example, plaintiff alleges that his due process rights were violated because he was found guilty of

9   threatening defendant Baker, despite his witnesses stating he did not threaten her.  However, the

10  ICC hearing decision reflects that plaintiff's investigative employee interviewed the inmate

11  witnesses that plaintiff requested and the inmate witnesses stated that plaintiff did not make any

12  threats.  MSJ at 350.  That the ICC members chose not to credit this evidence is not a due process

13  violation.[7]

14         While plaintiff's complaint includes many similar examples of alleged due

15  process violations,[8] his opposition to summary judgment only discusses that he requested

16  witnesses at the initial hearing but defendant Mitchell's report falsely states that plaintiff did not

17  request witnesses.  Even if plaintiff did request witnesses at the initial hearing and witnesses

18  were not allowed, plaintiff has failed to show this was a due process violation.  The right to call

19  witnesses may be limited, and regardless, the witness testimony was considered in the decision.

20  See Ponte v. Real, 471 U.S. at 495.  In addition, the results from the hearing where plaintiff

21  alleges he was denied the ability to present witnesses, was dismissed and plaintiff was later

22

23         [7] Plaintiff also requested his investigative employee interview the Honorable Peter C.
    Lewis, a Magistrate Judge in the Southern District of California, who apparently was involved in
24  a telephone settlement conference with plaintiff regarding an unrelated case.  Opposition at 52.
    That Judge Lewis was not interviewed regarding plaintiff's RVR is also not a violation of due
25  process.

26         [8] Plaintiff's demand for a polygraph examination was also denied.

1  provided a new hearing where all charges were dismissed.

2         Thus, plaintiff has failed to show any violation of due process and summary

3  judgment should be granted to defendants Arnold, Mitchell, St. Germaine and Cullen.[9]

4  X.  Qualified Immunity & Injunctive Relief

5         Because the court has found that the conduct alleged by plaintiff does not state a

6  constitutional deprivation, the court need not address defendants' argument for qualified

7  immunity.

8         To the extent that plaintiff has requested injunctive relief, any such claim is

9  denied as plaintiff has failed to state a constitutional deprivation and plaintiff is no longer housed

10  at CMF, so the claims are moot.

11         IT IS HEREBY ORDERED that defendants' August 27, 2009 motion for an

12  extension to file a summary judgment motion (Doc. 80) is granted.

13         Accordingly, IT IS HEREBY RECOMMENDED that the October 5, 2009 motion

14  for summary judgment (Doc. 82), be granted and this case closed.

15         These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

17  days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within fourteen days after service of the objections.  The parties are

21  \\\\\

22  \\\\\

23  \\\\\

24

25         [9]While extreme deprivations of basis necessities may implicate substantive due process,
plaintiff's allegations in no way rise to the level of a substantive due process violation.
26  Moreover, any such deprivation would be better analyzed under the Eighth Amendment.

1 | advised that failure to file objections within the specified time may waive the right to appeal the

2 | District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3 | DATED: June 18, 2010

/s/ Gregory G. Hollows

4 | _____

UNITED STATES MAGISTRATE JUDGE

5 | GGH: AB
wils0537.sj

21